IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01414-KLM

R. A. B.,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[1] on the **Social Security Administrative Record** [#10],[2] filed September 15, 2021, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claims for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq.  On December 22, 2021, Plaintiff filed an Opening Brief [#14] (the "Brief").  Defendant filed a Response [#17] in opposition, and Plaintiff filed a Reply [#18].  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  The

---

    [1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  See [#11, #19].

    [2] "[#10]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

1

Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Background

On January 8, 2019, Plaintiff filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI, alleging disability beginning June 20, 2016.  Tr. 12.[3]  On November 24, 2020, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 30.  The ALJ determined that Plaintiff meets the insured status requirements of the Act through June 30, 2020, and that he had not engaged in substantial gainful activity ("SGA") since June 20, 2016, the alleged onset date.  Tr. 15.

The ALJ found that Plaintiff suffers from three severe impairments: (1) degenerative disc disease of the cervical spine with myelopathy, status post cervical fusion in 2015; (2) peripheral neuropathy; and (3) low grade follicular lymphoma with lymphadenopathy.  Tr. 15.  However, the ALJ also found that Plaintiff's impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  Tr. 16.

The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 10 through 10-12, by the sequential transcript numbers instead of the separate docket numbers.

> [T]he claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; sit at least six hours out of an eight-hour workday; stand and/or walk six hours out of an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; can frequently reach, handle, finger, and feel; and must avoid working at heights or around heavy industrial machinery.

Tr. 17-18. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform his past relevant work as a delivery driver or, alternatively, that he was able to perform the representative occupations of cashier, housekeeping/cleaner, and merchandise marker. Tr. 28-29. She therefore found Plaintiff not disabled at steps four and five of the sequential evaluation. Tr. 28-30. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. §

3

416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993).  Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.     Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.      Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff argues that the ALJ erred at step four by failing to properly evaluate Plaintiff's reporting of his subjective symptoms. *Brief* [#14] at 12-16. Social Security Ruling (SSR) 16-3P, 2017 WL 5180304, at *7-8 (Oct. 25, 2017), provides:

> In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3). These factors include: 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any

6

> medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms.

"But the ALJ need not consider every one of these factors." *Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 809 (10th Cir. 2021) (citing SSR 16-3P, 2017 WL 5180304, at *8 ("If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case.")). Further, "an ALJ need not engage in 'a formalistic factor-by-factor recitation of the evidence' when evaluating the functional effects of a claimant's subjective symptoms." *Deherrera*, 848 F. App'x at 809-10 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Plaintiff primarily argues that the ALJ failed to properly assess Plaintiff's daily activities, part-time work, treatments, and reports of fatigue. *Brief* [#14] at 12. In part, the ALJ addressed these issues as follows:

> At the hearing, the claimant testified that he lives alone and does not currently work. He stated that he last worked two years ago as a delivery driver despite also noting his part time handyman work. He reported that he was currently unable to work due to a combination of fatigue and chronic pain. The claimant testified that a past cervical fusion stopped the progression of the numbness on the right side of his body. He stated that his pain level was currently a 3, and increased to 4-5 when he put on shoes. The claimant takes medication, hydrocone and Lyrica, and uses a pain patch, which lasts for seven days; however, the efficacy of the patch decreases towards the end of the seven-day period. His medication causes him to feel groggy. The claimant continues to work as a handyman for seniors up to nine hours a week shutting down swamp coolers and cleaning gutters. Due to his impairments, he can walk less than a quarter mile before

7

> feeling tired and having increased pain in his legs and feet, more pronounced in his right lower extremity. The claimant can stand for less than an hour before needing to sit, sit for no more than 15 minutes due to pain in his left shoulder and left upper forearm caused by an enlarged lymph node, and lift approximately 20-30 pounds, though he rarely lifts more than 20. In addition, the claimant reported difficulty gripping objects due to neuropathy in his hands. He also reports difficulty balancing due to his neck impairment.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. . . .
>
> First, the claimant's allegations regarding the severity of his symptoms are inconsistent with his activities of daily living. Despite his impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including cooking, washing dishes, walking, washing laundry, shoveling snow, and playing computer games. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds the claimant's ability to participate in such activities diminishes the consistency of the claimant's allegations of functional limitations.
>
> As mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity does not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

Tr. 18-19 (internal citation omitted).

**A.     Daily Activities**

Plaintiff argues that the ALJ's assessment of daily activities materially failed to demonstrate non-disability, which requires the ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. *Brief* [#14] at 12. Here, the

8

ALJ referred to Plaintiff's daily activities which included cooking, washing dishes, walking, washing laundry, shoveling snow, and playing computer games. Tr. 19. The ALJ stated that that such activities require some abilities necessary to work, but Plaintiff argues that such "activities in and of themselves are not condemnatory of disability as a claimant need not be bedridden to be disabled," and that limitations on daily activities need to be considered before such activities are deemed contrary to disability. *Brief* [#14] at 12.

It is true that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987) ("Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in substantial gainful activity, but such activities may be considered by the [Commissioner], along with medical testimony." (internal quotation marks omitted)). However, the ALJ here "was entitled to consider [Plaintiff's] regular and fairly extensive activities," including how those activities were performed, and properly did so in making her determinations regarding the consistency of Plaintiff's testimony with medical and other evidence. *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 848 (10th Cir. 2018); Tr. 18-19. In other words, the ALJ's consideration of Plaintiff's daily activities was clearly but one consideration of many that she examined in regard to her Step Four determination, and she considered any such limitations on these activities by examining Plaintiff's testimony in connection with the other evidence in the case.

Accordingly, the Court finds no reversible error in connection with the ALJ's discussion regarding Plaintiff's daily activities. *See Keyes–Zachary v. Astrue*, 695 F.3d

1156, 1166 (10th Cir. 2012) (stating that the Court does not insist on "technical perfection" in an ALJ's decision, but merely that the Court must be able to follow the ALJ's reasoning).

**B.     Part-Time Work**

Plaintiff similarly argues that the ALJ's assessment of part-time work materially failed to demonstrate non-disability, which requires the ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. *Brief* [#14] at 12. Here, the ALJ cited part-time work as showing that such activity necessarily requires some abilities used to work. *See* Tr. 19; *see also* Tr. 45 (works between zero and nine house per week), 46 (shut down one swamp cooler per day), 48 (clean gutters for 60-90 minutes). Plaintiff argues that such "activities in and of themselves are not condemnatory of disability as a claimant need not be bedridden to be disabled," and that limitations on part-time work need to be considered before such work can be deemed contrary to a finding of disability. *Brief* [#14] at 12.

Plaintiff is correct that evidence of part-time work is not dispositive of whether he was under a disability precluding full-time work. *See Wells v. Colvin*, 727 F.3d 1061, 1070 (10th Cir. 2013) (stating that a part-time job "does not necessarily demonstrate" that a claimant has the "ability to sustain" the "demands of full-time work"). However, the ALJ did not err in considering this information regarding Plaintiff's work history. *See, e.g.*, *Lopez v. Barnhart*, 183 F. App'x 825, 830 (10th Cir. 2006) (finding that the ALJ used the correct legal standard and did not err in considering the plaintiff's "regular part-time work during the time period of his alleged disability"); *see also Kepler v. Chater*, 68 F.3d 387, 389 n.2 (10th Cir. 1995) (noting that whether a claimant's work history is consistent with her application for benefits may be considered). The ALJ found that Plaintiff's part-time

10

work was considered supportive of a capacity to engage in some meaningful work-related functioning. The ALJ relied on Plaintiff's part-time work only as one consideration in conjunction with the other evidence of record, including Plaintiff's testimony and the medical record. *See Talbot*, 814 F.2d at 1462-63. In other words, the ALJ's consideration of Plaintiff's part-time work was clearly but one of many that she examined in regard to her Step Four determination, and she considered any such limitations on this part-time work by examining Plaintiff's testimony in connection with the other evidence in the case.

Accordingly, the Court finds no reversible error in connection with the ALJ's discussion regarding Plaintiff's part-time work. *See Keyes–Zachary*, 695 F.3d at 1166.

## C.     Treatments

Plaintiff argues that the ALJ's assessment of his treatments is contrary to the evidence of record. *Brief* [#14] at 12. He states that the record showed that physical therapy did not resolve his issues with sitting at a desk for greater than thirty minutes to perform computer work, *see* Tr. 1193, or with turning his head, *see* Tr. 1618. Medical professionals continued to prescribe Plaintiff medications such as fentanyl, Butrans, and Norco. Tr. 1575, 1601, 1659. Thus, Plaintiff argues that the ALJ's finding is incorrect regarding treatment improving neck-related symptoms.[4] *See* Tr. 22.

Plaintiff's argument misidentifies the determinations which the ALJ was required to make. The ALJ was required to determine not whether Plaintiff's physical limitations/restrictions were resolved, or whether Plaintiff continued to need medication, but, rather, the ALJ was required to determine what Plaintiff could and could not do and, accordingly, whether Plaintiff could perform full-time work even with those

---

[4] The remainder of Plaintiff's commentary on his treatments appears to relate directly to his argument regarding fatigue, which the Court addresses in the next section.

limitations/restrictions.  Throughout her analysis, the ALJ examined many pieces of evidence regarding Plaintiff's neck movement and medications.  *See, e.g.*, Tr. 21, 22 (discussing Plaintiff's neck history, including "minimal neck pain," in limiting him to light exertional work with only "occasional postural maneuvers"), 23-27.  Plaintiff appears to simply argues that the ALJ simply got it wrong.  However, despite differing interpretations of the evidence which may have been possible, the ALJ's thorough discussion and conclusion are well-supported by substantial evidence.  *See Washington*, 37 F.3d at 1439.

Accordingly, the Court finds no reversible error in connection with the ALJ's discussion regarding Plaintiff's treatments.  *See Keyes–Zachary*, 695 F.3d at 1166.

**D.    Fatigue**

Plaintiff argues that the ALJ failed to adequately factor in Plaintiff's consistent reports of fatigue.  *Brief* [#14] at 12.  Plaintiff states that a review of the record, including the exhibits cited by the ALJ, *see* Tr. 239-46, 852-58, show that Plaintiff was consistent in his reports that he slept more than would be appropriate for one working eight hours a day, five days a week, and that Plaintiff spread out activities to avoid over-exertion.  Plaintiff consistently reported to providers that he slept up to twelve hours a day.  Tr. 361, 1088, 1377.  He also reported daytime somnolence.  Tr. 1658.  Plaintiff reported to the consultative examiner that he slept up to fourteen hours a day.  Tr. 853.  Plaintiff asserts that this evidence accords with Plaintiff's testimony that he had to space out tasks for his part-time work.  *See* Tr. 45 (works between zero and nine house per week), 46 (shut down one swamp cooler per day), 48 (clean gutters for 60-90 minutes).  Plaintiff asserts

that there is no evidence in the record that Plaintiff engaged in substantial activity for extensive periods.

In addition, concerning fatigue and his lymphoma and associated issues, Plaintiff asserts that the record shows that he underwent a less-intensive kind of chemotherapy for his lymphoma due to the fact that he only had one kidney. Tr. 399, 1658. Although chemotherapy stopped in April 2017 with maintenance on Rituxan through February 2019, Plaintiff continued to have fatigue, even as late as August 2020. Tr. 1658, 1815. He also evidenced atrophy in the legs from thigh to knee in August 2020. Tr. 1658. Treatment, and cessation thereof, does not explain away the fatigue, according to Plaintiff. Plaintiff further states that the ALJ's citation of an October 2017 note where Nurse Practitioner Boggs posited that fatigue was likely related to returning to work versus fibromyalgia flare, *see* Tr. 22, 372, "does not do much to condemn" Plaintiff's claim given the continuing, consistent fatigue found later in the record. *Brief* [#14] at 15.

Although the evidence may be subject to differing interpretations, the ALJ's determination is supported by substantial evidence, which is all that is required here. *See Wilson*, 602 F.3d at 1140. The ALJ repeating discussed issues surrounding Plaintiff's fatigue, including the evidence regarding the cause of and at least partial alleviation of that fatigue. *See, e.g.*, Tr. 18 (noting Plaintiff's statements that his medication made him feel groggy and that he could only walk less than a quarter mile before feeling tired), 21-22, 23 (noting that the ALJ "considered the claimant's . . . generalized fatigue . . . and his doctor's opinion that the claimant could perform light work . . . in limiting the claimant to light exertional work"), 24-25 (noting that Dr. Moser's "generally persuasive" opinion relied in part on "the claimant's subject complaints, including the claimant's continued symptoms

13

of . . . neck pain, and fatigue" and daily activities), 26, 27 (noting "Dr. Robinson's suggestion that the claimant's fatigue and weight loss may not have been related to the claimant's lymphoma").  In light of this, the Court cannot find that the ALJ committed legal error or that her conclusions are not supported by substantial evidence.

Accordingly, the Court finds no reversible error in connection with the ALJ's discussion regarding Plaintiff's fatigue.  See *Keyes–Zachary*, 695 F.3d at 1166.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant and **CLOSE** this case.

Dated: July 26, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge